**In The**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FILED

JUL - 1 2002

Hazardous Materials Advisory Council, Inc., d/b/a Dangerous Goods Advisory Council
1101 Vermont Avenue, N.W., Suite 301
Washington, DC 20005;

American Chemistry Council
1300 Wilson Boulevard
Arlington, VA 22209;

American Trucking Associations, Inc.
2200 Mill Road
Alexandria, VA 22314;

The Chlorine Institute, Inc.
2001 L Street, N.W., Suite 506
Washington, DC 20036;

Compressed Gas Association
4221 Walney Road, 5th Floor
Chantilly, VA 20151;

The Conference on Safe Transportation of Hazardous Articles
RR I Box 1601 Bay Road
Lake George, NY 12845;

The Fertilizer Institute
Union Centre Plaza
820 First Street, N.E., Suite 430
Washington, DC 20002;

Institute of Makers of Explosives
1120 19th Street, N.W., Suite 310
Washington, DC 20036;

International Warehouse Logistics Association
1990 M Street, N.W., Suite 340
Washington, DC 20036;

CASE NUMBER 1:02CV01331

JUDGE: James Robertson

DECK TYPE: Administrative Agency Review

DATE STAMP: 07/01/2002

ECF

1

National Paint and Coatings Association, Inc.
1500 Rhode Island Avenue, N.W.
Washington, DC 20005;

National Propane Gas Association
1101 17th Street, N.W., Suite 1004
Washington, DC 20036;

National Tank Truck Carriers, Inc.
2200 Mill Road
Alexandria, VA 22314;

Petroleum Marketers Association of America
1901 North Fort Myer Drive, Suite 1200
Arlington, VA 22209;

Radiopharmaceutical Shippers
and Carriers Conference
2175 K Street, N.W.
Washington, DC 20037; *and*

Reusable Industrial Packaging Association
8401 Corporate Drive, Suite 450
Landover, MD 20785;

*Plaintiffs*,

*v*.

Norman Y. Mineta,
Secretary of Transportation,

Department of Transportation
400 Seventh Street, S.W.
Washington, DC 20590

*Defendant*.

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## Introduction

1. In this case, plaintiffs seek to compel the Department of Transportation to comply with its statutory duty under the Hazardous Materials Transportation Uniform Safety Act of 1990 ("HMTUSA" or "the Act") to adjust downward the registration fees that it collects under the Act to reflect the unexpended balance of such fees.

## The Parties

2. Defendant Norman Y. Mineta is the Secretary of Transportation and is the chief official of the Department of Transportation ("DOT"). The defendant maintains his principal office at 400 Seventh Street, S.W., Washington, D.C. 20590. The Department of Transportation, through its Research and Special Programs Administration ("RSPA"), is the agency responsible for implementing the relevant provisions of HMTUSA, including the registration fee-related requirements.

3. Plaintiff Hazardous Materials Advisory Council, Inc., d/b/a Dangerous Goods Advisory Council ("DGAC"), is a non-profit association incorporated in the District of Columbia and established to promote safe transportation of dangerous goods (known domestically as hazardous materials) by supporting adoption of sound, effective, and uniform safety standards, and providing extensive training programs. It is comprised of 158 large and medium-sized companies engaged in shipping and transporting dangerous goods, associated businesses, and 21 trade associations representing thousands of air, highway, and rail transporters, chemical producers and distributors, and packaging manufacturers. As a part of or incidental to their business, many of DGAC's members transport or cause to be transported hazardous materials

subject to the registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C. § 5108(g). DGAC and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

4. Plaintiff American Chemistry Council ("the Council"), a corporation formed under the laws of the state of New York, represents the leading companies engaged in the business of chemistry, a $450 billion enterprise and a key element of the nation's economy. Council members represent more than 90% of the productive capacity of basic industrial chemicals in the United States and a large portion of the regulated hazardous materials shipping community. The Council is committed to continuously improve the safety and efficiency of hazardous materials transportation. As a part of or incidental to their business, most of the Council's members transport or cause to be transported hazardous materials subject to the registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C. § 5108(g). The Council and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

5. Plaintiff American Trucking Associations ("ATA") is a united federation of motor carriers, state trucking associations and national trucking conferences created to promote and protect the interests of the trucking industry. ATA is a not-for-profit corporation organized under Section 501(c)(6) of the Internal Revenue Code and incorporated in the District of Columbia. Its membership includes more than 2,000 trucking companies and industry suppliers of equipment and services. As a part of or incidental to their business, many of ATA's members transport hazardous materials subject to the registration requirement set forth in 49 U.S.C.

§ 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C. § 5108(g). ATA and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

6. Plaintiff The Chlorine Institute, Inc. ("the Institute"), founded in 1924 and incorporated under the laws of the state of Delaware, is a 225-member not-for-profit trade association of worldwide chlor-alkali producers, as well as packagers, distributors, users and suppliers. The Institute's mission is the promotion of safety and the protection of human health and the environment in the manufacture, distribution and use of chlorine, sodium hydroxide, potassium hydroxide and sodium hypochlorite, plus the distribution and use of hydrogen chloride. The Institute's North American members account for approximately 99 percent of the total chlorine production capacity of the United States, Canada and Mexico. As a part of or incidental to this business, a majority of the Institute's members transport or cause to be transported hazardous materials subject to the registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C. § 5108(g). The Institute and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

7. Plaintiff Compressed Gas Association ("CGA") is a trade association incorporated under the laws of the Commonwealth of Virginia dedicated to developing and promoting safety standards and safe practices in the industrial gas industry. Its members are manufacturers, distributors, suppliers, and transporters of gases, cryogenic liquids, and related products encompassing industrial, medical, and specialty gases in compressed or liquefied form, and a range of gas handling equipment. As a part of or incidental to this business, many of CGA's members transport or cause to be transported hazardous materials subject to the

registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C. § 5108(g). CGA and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

8.  Plaintiff The Conference on Safe Transportation of Hazardous Articles ("COSTHA") is a non-profit organization incorporated under the laws of the state of Delaware. COSTHA represents manufacturers, shippers, distributors, carriers, freight forwarders, trainers, packaging manufacturers and others associated with the hazardous materials transportation industry. In addition to promoting regulatory compliance and safety in hazardous materials transportation, COSTHA assists its members and the public in evaluating the practicality and efficacy of laws, rules and regulations for the safe transportation and distribution of hazardous materials. COSTHA members ship and/or transport hazardous materials throughout the United States and throughout the world. Hazardous materials manufactured and transported by COSTHA members include pharmaceuticals, consumer products, industrial and laboratory chemicals, institutional cleaning and disinfectant products, diagnostic materials, automobiles, agricultural products, flavors and fragrances, paints and coatings, photographic supplies and a wide variety of other materials. Of the 110 current COSTHA members, approximately 75 transport or cause to be transported hazardous materials subject to the registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C. § 5108(g). COSTHA and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

9.  Plaintiff The Fertilizer Institute ("TFI"), incorporated under the laws of the state of Delaware, is the national trade association of the fertilizer industry. TFI represents by

voluntary membership more than 90 percent of the U.S. fertilizer industry. TFI's nearly 150 member companies include producers, manufacturers, distributors, and retailers of fertilizer and fertilizer materials. As a part of or incidental to their business, many of TFI's members transport or cause to be transported hazardous materials subject to the registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C. § 5108(g). TFI and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

10. Plaintiff Institute of Makers of Explosives ("IME") is the safety association of the commercial explosives industry. It is a non-profit, 501(c)(6) organization incorporated in the District of Columbia. The IME represents all U.S. manufacturers of high explosives and other companies that distribute explosives or provide other related services. Over 2.5 million metric tons of explosives are consumed annually in the United States of which IME member companies produced over 95 percent. These products are used in every state in the Union and are distributed worldwide. As a part of or incidental to their business, all of IME's members transport or cause to be transported hazardous materials subject to the registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C. § 5108(g). IME and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

11. Plaintiff International Warehouse Logistics Association ("IWLA") is a trade association comprised of 600 member companies in the United States and Canada that specialize in third party warehousing and other logistics based services. IWLA is a nonprofit 501(c ) (6) organization incorporated in the state of Illinois. Many IWLA members are involved in the storage and handling of regulated product. As such, many Association members cause to

be transported hazardous materials subject to the registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C. § 5108(g). IWLA and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

12. Plaintiff National Paint and Coatings Association, Inc. ("NPCA") is a voluntary non-profit industry association incorporated under the laws of the state of Delaware. Originally organized in 1888, NPCA today comprises some 400 members who are engaged in the manufacture and distribution of paint, coatings, adhesives and related products and the raw materials used to produce these products. NPCA's membership collectively produces about 95% of the total national volume of paints and allied products. The paint and coatings industry utilizes all transportation modes to distribute products throughout the nation, although the bulk of the industry's products are shipped by motor and rail vehicles. As part of or incidental to their business, virtually all of NPCA's members transport or cause to be transported hazardous materials subject to the registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C. § 5108(g). NPCA and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

13. Plaintiff National Propane Gas Association ("NPGA"), incorporated under the laws of the state of New Jersey, is the national trade association of the LP-gas (principally propane) industry with a membership of about 3,800 companies, including 39 affiliated state and regional associations representing members in all 50 states. Although the single largest group of NPGA members is retail marketers of propane gas, the membership includes propane producers, transporters and wholesalers, as well as manufacturers and distributors of associated equipment,

containers and appliances. As a part of or incidental to their business, many of NPGA's members transport or cause to be transported hazardous materials subject to the registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C. § 5108(g). NPGA and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

14. Plaintiff National Tank Truck Carriers, Inc. ("NTTC") is a trade association incorporated under the laws of the Commonwealth of Virginia. NTTC is composed of approximately 175 trucking companies which specialize in the domestic and international transportation of hazardous materials in cargo tank motor vehicles. As a part of or incidental to this business, nearly all of NTTC's members transport or cause to be transported hazardous materials subject to the registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C. § 5108(g). NTTC and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

15. Plaintiff Petroleum Marketers Association of America ("PMAA"), incorporated under the laws of the Commonwealth of Virginia, is a federation of 42 state and regional trade associations representing 8,000 small, independent petroleum marketers. These marketers sell nearly half the gasoline, over 60 percent of the diesel fuel, and approximately 85 percent of the home heating oil consumed in this country annually. As a part of or incidental to this business, all of PMAA's members transport or cause to be transported hazardous materials subject to the registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C.

§ 5108(g). PMAA and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

16. Plaintiff Radiopharmaceutical Shippers and Carriers Conference ("RSCC") is an unincorporated association that represents businesses engaged in the production and distribution of nuclear medicines to hospitals for the benefit of seriously ill patients. These are specialized businesses, where safe and timely delivery of the products is essential to the recipients and the public at large. As a part of or incidental to this business, all of RSCC's members transport or cause to be transported hazardous materials subject to the registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of Transportation pursuant to 49 U.S.C. § 5108(g). RSCC and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

17. Plaintiff Reusable Industrial Packaging Association ("RIPA"), founded sixty-one years ago, is a 145-member not-for-profit trade association incorporated under the laws of the State of New York representing North American reconditioners and manufacturers of industrial packagings, including steel, plastic, and fiber drums, as well as intermediate bulk containers. Members adhere to a "Code of Operating Practice" which sets forth guiding principles intended to improve the industry's performance in the area of waste reduction, worker health and safety, and environmental management. RIPA members represent approximately 90% of the industrial packaging reconditioning industry production capacity in the United States. As a part of or incidental to this business, several of RIPA's members transport or cause to be transported hazardous materials subject to the registration requirement set forth in 49 U.S.C. § 5108(a), and therefore are required to pay an annual hazmat registration fee to the Department of

Transportation pursuant to 49 U.S.C. § 5108(g). RIPA and its members also are affected by the expenditures of such funds made pursuant to HMTUSA.

18. The plaintiffs and their members are among those for whose benefit HMTUSA was enacted. The hazmat registration fees support hazardous material emergency response planning, training, and related activities by states, local governments, and Indian tribes. These activities support the transportation of hazardous materials by plaintiffs' member companies. The plaintiffs' member companies are among the persons that pay the § 5108(g)(2) hazmat registration fees, and thus are among the group of entities for whose benefit the specific statutory provision at issue in this case — requiring the adjustment of the registration fees (49 U.S.C. § 5108(g)(2)(B)) — is intended.

**Jurisdiction and Venue**

19. Jurisdiction rests with this Court under 28 U.S.C. §§ 1331 because this action arises under the laws of the United States.

20. This Court is a proper venue for this action under 28 U.S.C. § 1391(e) because the defendant is an officer or employee of an agency of the United States acting in his official capacity or under color of legal authority, and the defendant's agency is located in the District of Columbia.

**Statement of Facts**

21. HMTUSA, enacted in 1990, established a program of grants to fund hazardous material emergency response planning, training, and related activities by states, local governments, and Indian tribes.

22. The Act provides that the grant program would be funded by fees collected from certain categories of persons required to register with the Department of Transportation under 49

U.S.C. § 5108. Currently, the Department of Transportation requires the filing of a registration statement and imposes a yearly fee ("hazmat registration fee") on persons that transport or cause to be transported hazardous materials.

23. The Department of Transportation conducted a rulemaking to establish a national registration program to implement the Act, and promulgated a final rule at 57 Fed. Reg. 30620 (July 9, 1992). Subsequently, various clarifications, interpretations, and revisions of the program were issued by the Department of Transportation, most recently at 65 Fed. Reg. 7297 (Feb. 14, 2000).

24. The hazmat registration fee is established under 49 U.S.C. § 5108(g)(2). (HMTUSA also established, distinct from the hazmat registration fee itself, a separate processing fee under 49 U.S.C. 5108(g)(1), which is not at issue in this case).

25. For registration years up to and including 1999-2000, the hazmat registration fee under § 5108(g)(2) (*i.e.,* without the separate processing fee) was fixed at a uniform $250.

26. In 2000, DOT expanded the set of persons required to register and also amended the fee schedule to create a two-tiered structure for the hazmat registration fees and increased the fees. *See* 65 Fed. Reg. 7297 (Feb. 14, 2000).

27. The hazmat registration fee under § 5108(g)(2) currently is set at $275 for small businesses and $1,975 for other businesses. *See* 49 C.F.R. § 107.612(b).

28. Collected hazmat registration fees are deposited into an account, commonly known as the Hazardous Materials Emergency Preparedness Fund ("HMEP fund"), which was established pursuant to 49 U.S.C. § 5116(i).

29. HMTUSA provides that amounts in the HMEP fund may be spent only for specifically-listed purposes, including making grants under § 5116, monitoring and providing

technical assistance under subsection 5116(f), curriculum development under § 5115, and paying certain administrative costs.

30. In each fiscal year since the 2000 fee increase, expenditures from the HMEP fund, by law, may not exceed $14.3 million per fiscal year. *See* Public Laws 106-346 and 107-87.

31. Under § 5108(g)(2)(B), the Department of Transportation is required by law to adjust the amount of the hazmat registration fee being collected to reflect any unexpended balance in the HMEP fund.

32. On information and belief, for the fiscal year ending September 30, 2000, the hazmat registration fees collected and deposited in the HMEP fund amounted to $24.9 million, and for the fiscal year ending September 30, 2001 the hazmat registration fees collected and deposited in the HMEP fund amounted to $21.1 million.

33. On information and belief, expenditures from the HMEP fund amounted to $14.3 million in fiscal year 2000 and $14.3 million in fiscal year 2001.

34. According to DOT, as of December 7, 2000, the unexpended balance in the HMEP fund was $8.5 million. *See* 65 Fed. Reg. 76890 (Dec. 7, 2000). According to the administration's Fiscal Year 2003 budget request, the unexpended balance in the HMEP fund at the end of Fiscal Year 2001 was $18.2 million. *See* RSPA Fiscal Year 2003 Budget Submission, page 86. On information and belief, the unexpended balance in the HMEP fund is expected to grow at a rate of about $8 million per year, and will have risen to approximately $26 million by the end of Fiscal Year 2002.

35. In 2000, The Department of Transportation initiated a rulemaking to adjust the hazmat registration fee to reflect the unexpended balance in the HMEP fund. *See* 65 Fed. Reg. 76890 (Dec. 7, 2000) (docket RSPA-00-8439).

36. In initiating that rulemaking, DOT recognized that "[t]he law requires DOT to adjust the amount of the annual registration fee 'to reflect any unexpended balance in the account established under section 5116(i),'" citing 49 U.S.C. § 5116(g)(2)(B). DOT proposed to lower the registration fee for the next six registration years (2001-02 through 2006-07) "in order to eliminate the unexpended balance (or surplus) in the HMEP grants fund." 65 Fed. Reg. at 76890 (Dec. 7, 2000).

37. However, the Department of Transportation has twice suspended this rulemaking in anticipation of administration budgetary proposals calling for expenditures from the HMEP fund for purposes not authorized under HMTUSA. *See* 66 Fed. Reg. 22080 (May 2, 2001) and 67 Fed. Reg. 11456 (Mar. 12, 2002).

38. The President's budget requests for Fiscal Years 2000, 2001 and 2002 proposed to fund a portion of the Department of Transportation's overall hazardous materials safety program — a purpose not specified under HMTUSA — with hazmat registration fees collected pursuant to § 5108(g). *See* RSPA budget requests for FY 2000 (page 54), 2001 (page 70) and 2002 (page 22). These proposals, however, were rejected.

39. The President's Fiscal Year 2003 budget request proposes, yet again, to fund a portion of the Department of Transportation's overall hazardous materials safety program — a purpose not specified under HMTUSA — with hazmat registration fees collected pursuant to § 5108(g). *See* RSPA budget request for FY 2003 (page 38). This proposal is pending.

40. To date, the Department of Transportation has failed to adjust the hazmat registration fee as required under § 5108(g)(2)(B) to reflect the unexpended balance in the HMEP fund, and instead has held the unexpended balance in reserve pending its requests to

Congress, which repeatedly have been rejected, to use the HMEP fund for purposes other than those specified under HMTUSA.

**Count I – Failure To Adjust Hazmat Registration Fee As Required Under § 5108(g)(2)(B)**

41. Plaintiffs re-allege and incorporate by this reference each and every fact set forth in paragraphs 1 through 40, inclusive.

42. The HMEP fund currently has a significant unexpended balance because the hazmat registration fees collected by the Department of Transportation annually since registration year 2000-2001 have exceeded the appropriation level established by Congress, while actual expenditures from the HMEP fund have been limited to the appropriated amount.

43. The Department of Transportation has no authority to collect hazmat registration fees in an amount greater than that required to fund, on an annual basis, the appropriations that can be made from the HMEP fund pursuant to HMTUSA, without subsequently adjusting the fee as required by § 5108(g)(2)(B).

44. The Department of Transportation has failed to adjust the hazmat registration fee to reflect the unexpended balance in the HMEP fund as required by § 5108(g)(2)(B).

45. Plaintiffs' members have been injured by the Department of Transportation's failure to adjust the hazmat registration fee as required by § 5108(g)(2)(B) because the hazmat registration fee imposes a financial burden on plaintiffs' members.

**Prayer For Relief**

WHEREFORE, the plaintiffs respectfully request the following:

A. A declaration by this Court under 28 U.S.C. § 2201 that (1) the Department of Transportation has violated and is violating § 5108(g)(2)(B) by refusing to adjust the hazmat

registration fee to reflect the unexpended balance of the HMEP fund, and that (2) plaintiffs' members subject to the hazmat registration fees under § 5108(g)(2) have the obligation to pay, and the Department of Transportation has the right to collect, only such fees as are properly adjusted under § 5108(g)(2)(B) and otherwise consistent with HMTUSA;

B. An injunction prohibiting the collection of any further hazmat registration fees under 49 U.S.C. §5108(g)(2) (but not enjoining the registration process itself or collection of the processing fee under 49 U.S.C. §5108(g)(1)) from persons required to register pursuant to § 5108(a) until the Department of Transportation has adjusted the hazmat registration fee as required under § 5108(g)(2)(B); and

C. Such further relief as the Court deems appropriate.

Respectfully submitted,

Scott M. Zimmerman, D.C. Bar No. 437158
Richard P. Schweitzer, D.C. Bar No. 364457
Jol A. Silversmith, D.C. Bar No. 463897
ZUCKERT, SCOUTT, AND RASENBERGER, L.L.P.
888 Seventeenth Street, N.W., Suite 700
Washington, DC 20006
(202) 298-8660

*Attorneys for Plaintiffs*

July 1, 2002